# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| REBECCA VLASEK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0386 |
| | § | |
| WAL-MART STORES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

In this employment case, Rebecca Vlasek seeks damages from her former employer,

Wal-Mart Stores, Inc. and Sam's East, Inc. (together, "Wal-Mart"), for firing her in 2006

because she was a registered sex offender.  Vlasek filed suit in January 2007, alleging

wrongful termination, disability discrimination, a violation of the Fair Credit Reporting Act

(FCRA), and laches, waiver, and estoppel.  In December 2007, Wal-Mart moved for

summary judgment under Rule 56 of the Federal Rules of Civil Procedure on Vlasek's

claims.[1]  (Docket Entry No. 30). Vlasek moved for a continuance under Rule 56(f) to allow

her to take a deposition and conduct other discovery before responding to Wal-Mart's

summary judgment motion.  (Docket Entry No. 41).  Wal-Mart responded.  (Docket Entry

---

[1]Wal-Mart has filed a motion to place under seal documents that were relied on in an affidavit it submitted in support of its summary judgment motion.  These documents were designated by Wal-Mart as confidential pursuant to an agreed protective order entered in this case. (Docket Entry No. 33).  Vlasek has not responded.  The documents consist of materials from Vlasek's personnel file, including such personal identifiers as her social security number.  (*Id.*).  Such information may not be included in the publicly accessible information.  Wal-Mart's motion to place the documents under seal is granted.

Nos. 43, 47).  Vlasek took the deposition and moved to compel production of personnel files for employees who were not fired despite the fact that they, like Vlasek, were registered sex offenders.  Vlasek asserted that these files were relevant to a claim of sex discrimination, which she had not raised in her EEOC charge, not asserted in her complaint, and not been permitted to raise in an amended complaint.  (Docket Entry No. 50).  After a hearing, this court granted in part Vlasek's motion for a continuance, denied her motion to compel the production of personnel files, and ordered her to respond to Wal-Mart's summary judgment motion by May 29, 2008. (Docket Entry No. 54).  That motion is now pending, with Vlasek's cross-motion for summary judgment and supplemental motion to compel production. (Docket Entry No. 55).  Wal-Mart has replied to Vlasek's motions and moved to strike her cross-motion for summary judgment, (Docket Entry No. 57), to which Vlasek has responded, (Docket Entry No. 59).

Based on a careful review of the pleadings, the motions, responses, and replies, the parties' submissions, and the applicable law, this court grants Wal-Mart's motion for summary judgment and denies Vlasek's cross-motion for summary judgment.  Vlasek's motion to compel production is denied.  Wal-Mart's motion to strike Vlasek's cross-motion

is denied as moot.[2]  Final judgment is entered by separate order.  The reasons for these rulings are set out in detail below.

## I.     Background

In October 1999, Vlasek pleaded guilty in state court to the felony charge of sexual assault of a minor.  She received deferred adjudication and was placed on probation for 10 years.  (Docket Entry No. 30, Ex. B).  As a result of that plea, Vlasek is required to register with the state as a sex offender.

Vlasek applied for a job with Wal-Mart in November 1999.  On her application, Vlasek did not disclose her status as a registered sex offender.  (Docket Entry No. 30, Ex. A at 83, 90–91).  Wal-Mart hired Vlasek and later promoted her to co-manager.  (*Id.*, Ex. A at 105, 109).

In 2003, Wal-Mart received an anonymous letter and an anonymous phone call stating that Vlasek was a registered sex offender.  Local Wal-Mart managers met with Vlasek about the allegations.  Vlasek testified that in one meeting, when she became upset after admitting that she had an "inappropriate relationship" with a minor, Vlasek's store manager reassured her "that everything would be okay" and told her to "calm down."  Vlasek testified that at

---

[2]Wal-Mart has also filed a motion to exclude the expert testimony of Sam Harris, whom Vlasek designated as an expert in human resources management.  In his report, Harris opines that Wal-Mart's actions were unfair "considered from the theory of psychological contracts" and "contrary to recognized principles of Human Resources Management."  (Docket Entry No. 32).  Vlasek filed a motion for extension of time to respond to that motion.  (Docket Entry No. 36).  Vlasek does not rely on Harris's report in her response to Wal-Mart's motion for summary judgment.  Whether Wal-Mart's actions were unfair "considered from the theory of psychological contracts" or "contrary to recognized principles of Human Resources Management" is not relevant to the grounds on which Wal-Mart has moved for summary judgment.  Both the motion to strike and the motion to extend the time to respond to that motion are denied as moot.

another meeting, the district manager stated that "as far as I'm concerned, you don't talk about this any further, I don't talk about this any further, and we've all got skeletons in our closet" and "I consider it to be a dead issue." (Docket Entry No. 30, Ex. A at 111–13, 116–17, 120, 122–23, 146, 148–50, 156–58; *id*, Ex. E). Vlasek testified that "[the district manager] pro – not that I wrote out a contract and he promised me that my job would be there forever, but he promised me that it would not affect me again. And I took him at his word." (*Id.*, Ex. A at 186). In her affidavit, Vlasek stated that she was told "that as long as I performed well, the criminal events of my past would not affect my status with the company," and that "as long as I did my job, the accusations would have no impact on my employment." (Docket Entry No. 55, Ex. A at 2–3).

In late 2004, Wal-Mart added a search of publicly available sex offender registries to its preemployment screening process and instituted a formal policy of reviewing the employment of registered sex offenders. (Docket Entry No. 30, Ex. D at 2; Docket Entry No. 50, Ex. B at 30–31). Wal-Mart fired 825 of 850 employees found to be registered sex-offenders. (Docket Entry No. 50, Ex. B at 30–31).

In May 2006, Wal-Mart's Global Security Division learned that Vlasek was listed on the Texas sex offender registry. (Docket Entry No. 30, Ex. D at 2). On May 22, 2006, Wal-Mart investigators met with Vlasek about her status as a registered sex offender. During this meeting, Vlasek was interviewed and asked to sign an FCRA disclosure form authorizing a criminal background check. (*Id.*). The Wal-Mart Registered Sex Offender Review

4

Committee unanimously voted to fire Vlasek on June 19, 2006 because of her criminal conviction for sexual assault of a minor. (Docket Entry No. 30, Ex. I; Docket Entry No. 55, Ex. D).

On November 3, 2006, Vlasek filed an EEOC Charge of Discrimination. She checked the box identifying "disability" as the basis of the alleged discrimination. She identified June 19, 2006 as the date on which the discrimination occurred. She described the discriminatory act as her termination from her position as a manager at a Wal-Mart store. She explained:

> I WAS TERMINATED AS A MANAGER AT MY SAM'S CLUB (WAL-MART) STORE. THE STATED REASON FOR MY TERMINATION WAS THE FACT THAT I AM LISTED ON/AS A REGISTERED SEX OFFENDER. THIS FACT WAS KNOWN AND ADDRESSED BY MY EMPLOYER OVER SEVEN YEARS AGO WHEN I WAS FIRST HIRED; AS WELL AS APPROXIMATELY THREE YEARS AGO WHEN THE SUBJECT AGAIN SURFACED MYSTERIOUSLY. ON EACH PREVIOUS OCCASION, I ANSWERED ALL INQUIRIES FORTHRIGHTLY AND HONESTLY— AND WAS LED TO BELIEVE THAT THE ISSUE WAS CLOSED. THE MATTER RE-OPENED IN JUNE 2006 AND I WAS TERMINATED.
> I BELIEVE THE ADVERSE ACTION WAS BASED ON A DISABILITY. THAT IS, MY STATUS AS A REGISTERED SEX OFFENDER (FOR A 10-YEAR PERIOD WHICH ENDS IN A COUPLE OF YEARS) IS A "CONDITION" OVER WHICH I HAVE NO CONTROL—THE STATUS REMAINS IN EFFECT FOR THE DURATION OF THE 10-YEAR PERIOD. AFTER THAT TIME THE "DISABILITY" WILL BE REMOVED. I BELIEVE THAT MY SITUATION TRACKS AND FALLS UNDER THE STATUTORY DEFINITION OF "DISABILITY" AS SET OUT IN THE ADA.

This court earlier denied as futile Vlasek's opposed motion for leave to amend her complaint to assert additional causes of action for failure to accommodate her alleged disability, sex discrimination, breach of implied contract, promissory estoppel, breach of

good faith and fair dealing in employment, a "facial" challenge to the Wal-Mart policy on employing sex offenders, and an "as applied" challenge to the policy and procedures used in firing Vlasek.  (Docket Entry Nos. 15, 40).  The sex discrimination claim was not permitted to proceed because Vlasek had clearly failed to raise it in her EEOC charge.

The issue now before the court is whether the remaining claims are subject to summary judgment.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "'An issue is material if its resolution could affect the outcome of the action.'"  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund*

*Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (citation omitted).

## III.    Analysis

### A.    Vlasek's Motion to Compel

Vlasek seeks to compel the production of the personnel files for the 25 out of 850 employees who Wal-Mart retained despite their status as registered sex offenders.  (Docket Entry Nos. 50, 55 at 6).  Vlasek asserts that these files are relevant because they could show

that Wal-Mart treated employees who were registered sex offenders differently depending on their sex.  (Docket Entry No. 50 at 7–8).

This court previously denied as futile Vlasek's motion for leave to amend to add a sex discrimination claim.  In the proposed amended complaint, Vlasek alleged that Wal-Mart fired her because she was a registered sex offender but did not fire male employees who were registered sex offenders.  This court found it would be futile to allow amendment to assert this claim because it was not included in, and was beyond the investigation reasonably likely to result from, her EEOC charge.  Vlasek could not satisfy the administrative exhaustion requirements for bringing a sex discrimination suit.  (Docket Entry Nos. 15, 40).  Federal Rule of Civil Procedure 26(b) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Whether Wal-Mart treated 25 out of 850 registered sex offender employees differently based on sex is not relevant to the claims or defenses raised in this suit or the grounds on which Wal-Mart has moved for summary judgment on Vlasek's disability discrimination, FCRA, wrongful termination, waiver, estoppel, and laches claims.  Vlasek's motion to compel is denied.

**B.     Disability Discrimination**

Vlasek alleges that she was fired in violation of the ADA because her "status as being listed on a sex offender registry represents an impairment in the significant life activity of work."  (Docket Entry No. 1 at 6).  "The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such

8

individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)).   The elements of a *prima facie* case of disability discrimination under the ADA are: (1) a disability as defined by the ADA; (2) the plaintiff is a "qualified individual" for the job; and (3) the employer made an adverse employment decision based on the disability.  *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999); *Robertson v. The Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998).

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarding regarded as having such an impairment  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (quoting 42 U.S.C. § 12102(2)(A)). "Substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).  The term "disability" is defined in the regulations to exclude "[t]ransvestism, transsexualism,

pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders[.]" 29 C.F.R. § 1630.3(d)(1).

Being a registered sex offender is not "a mental or physical impairment." *Shaw v. Smith*, No. 04-C-979, 2006 WL 587667, at *10 –11 (E.D. Wis. Mar. 10, 2006). And although Wal-Mart has a policy against hiring registered sex offenders, there are many jobs for many employers that Vlasek is fully capable of performing. To be disabled from working under the ADA requires an inability to work in a broad class of jobs or in different classes of jobs, not merely an inability to work for a particular employer. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). Finally, there is no showing that Vlasek was regarded as disabled under the ADA.

Wal-Mart's motion for summary judgment on Vlasek's disability discrimination claim under the ADA is granted.

## C.    Sex Discrimination

Vlasek recognizes that "[t]his court has ruled previously that because Vlasek presented no gender claims in her EEOC filing, those claims have now lapsed and are not eligible for review in this instant lawsuit," but now "seeks to invoke equitable tolling as the vehicle for vindicating this gender claim in this instant lawsuit." (Docket Entry No. 55 at 1). Vlasek asserts that equitable tolling is warranted because she had no indication that her sex played a role in her discharge when she filed her EEOC complaint, that Wal-Mart represented to her that no exceptions were made to its policy of firing employees who were

registered sex offenders, and that it was not until March 13, 2008, during a deposition of a Wal-Mart corporate representative, that Vlasek learned that Wal-Mart had not fired all employees that it knew were registered sex offenders.  (Docket Entry No. 55 at 1–6).

The  equitable tolling doctrine applies to the limitations period for filing a charge and does not excuse an employee from the requirement of filing a charge and exhausting a claim. *See Douglas v. Potter*, No. 07-1666, 2008 WL 565079, at *3 (7th Cir. Mar. 4, 2008) ("[E]quitable tolling is not a basis for excusing a failure to exhaust administrative remedies altogether."); *Hines v. Widnall*, 334 F.3d 1253, 1257 (11th Cir. 2003) ("[Plaintiff] does not qualify for an exception to the exhaustion requirement . . . because filing a complaint with the EEOC is a prerequisite to the equitable exceptions to administrative exhaustion."); *Sommatino v. United States*, 255 F.3d 704, 710 (9th Cir. 2001) ("[E]quitable tolling can extend the deadline for filing when equity so requires. . . . However, equitable remedies are unavailable when the record shows that no administrative filing was ever made."); *O'Rourke v. Cont'l Casualty Co.*, 983 F.2d 94, 97 (7th Cir. 1993) ("Equitable tolling enlarges the time within which to proceed but does not justify omitting steps such as the administrative charge that Congress has made essential.").  Vlasek's November 3, 2006 EEOC Charge did not allege sex discrimination, and Vlasek has failed to file another charge alleging sex discrimination.  Equitable tolling does not apply to excuse Vlasek's failure to include a sex discrimination claim in her EEOC charge and yet pursue litigation on the basis of that claim. *See O'Rourke*, 983 F.2d at 96–97 (finding that equitable tolling could not apply to a claim

that was not within the scope of the plaintiff's EEOC charge because there was no charge to

toll, and that the plaintiff should have filed a "fresh charge" regarding the unrelated claim

and asserted equitable tolling as a justification for the delay in filing that charge).

### D.    Fair Credit Reporting Act Violations

Vlasek alleges that Wal-Mart violated the FCRA by using information obtained in a

credit/background check as a basis for firing her without providing her with a copy of the

report.  (Docket Entry No. 1 at 6).  Wal-Mart argues that Vlasek cannot assert an FCRA

claim because the undisputed facts show that she suffered no damages from the alleged

violation and because there is no evidence that Wal-Mart wilfully violated the FCRA.

Section 1681b(b)(3) of the FCRA states that "in using a consumer report for

employment purposes, before taking any adverse action based in whole or in part on the

report, the person intending to take such adverse action shall provide to the consumer to

whom the report relates (I) a copy of the report; and (ii) a description in writing of the rights

of the consumer under this subchapter."  15 U.S.C. § 1681b(b)(3)(A); *see also Beverly v.*

*Wal-Mart Stores, Inc.*, No. 3:07CV469, 2008 WL 149032, at *2 (E.D. Va. Jan. 11, 2008);

*Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp.2d 371, 391 (S.D.N.Y. 2001).

The FCRA contains separate provisions on liability for negligent and wilful violations.

Section 1681o states that "[a]ny person who is negligent in failing to comply with any

requirement imposed under this subchapter with respect to any consumer is liable to that

consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer

as a result of that failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court." 15 U.S.C. § 1681o.  Section 1681n states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . . (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681n.

Wal-Mart's failure to provide Vlasek with a copy of her report did not cause actual damage.  Wal-Mart fired Vlasek because she was a registered sex-offender as a result of her criminal conviction for sexual assault of a minor.  (Docket Entry No. 30, Ex. I; Docket Entry No. 55, Ex. D).  Vlasek does not dispute the accuracy of the information about her criminal history contained in the report.  (Docket Entry No. 30, Ex. A at 211).  She concedes that she would have been fired whether or not she was provided with a copy of the report.  (*Id.*, Ex. A at 210).  Vlasek cannot recover under section 1681o because she has not suffered actual damages from the failure to receive a copy of the FCRA report.  *See Hyde v. Hibernia Nat. Bank in Jefferson Parish*, 861 F.2d 446, 448 (5th Cir. 1988) (citations omitted) ("[The FCRA] permits any consumer who is injured by the negligent failure of a reporting agency

to comply with any requirement imposed by the Act to sue for the actual damages sustained by the consumer as a result of the failure, together with the cost of the action and reasonable attorney's fees."); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160–61 (11th Cir. 1991) (declining to address "the substance of Cahlin's FCRA claims against TRW because we find that he has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate TRW credit report" because there was no evidence "that allegedly inaccurate information on that report was the cause of Cahlin's denial of credit"); *Pettus v. TRW Consumer Credit Service*, 879 F. Supp. 695, 697–98 (W.D. Tex. 1994) (citing Hyde, 861 F.2d at 448) ("[T]he FCRA provides a remedy for consumers who are actually damaged by a failure to comply with the Act's requirements. . . . [P]roof of damage is an essential element of an action under the FCRA.").

In its motion, Wal-Mart has pointed to the absence of evidence in the record showing that it acted wilfully in failing to provide Vlasek with a copy of her report. Vlasek failed to respond to Wal-Mart's contention that there was no evidence of a wilful violation. Vlasek cannot recover under section 1681n because she has not raised a fact issue as to whether Wal-Mart willfully violated the FCRA. *See Celotex*, 477 U.S. at 325.

Wal-Mart's motion for summary judgment on Vlasek's FCRA claims is granted.

### E.     Wrongful Termination, Waiver, Estoppel, and Laches

Vlasek alleges that "[t]he actions of Wal-Mart in discharging plaintiff after Wal-Mart knew of the cause prior to hiring the plaintiff; and fired plaintiff only later [], after an interval

14

during which time Rebecca Vlasek did no act giving good cause for the discharge, were contrary to law." (Docket Entry No. 1 at 5). Vlasek alleges that Wal-Mart has "waived any claim of right to terminate plaintiff based on her mere listing on a sex offender register" and is "estopped from any adverse employment action where such adverse employment action is based on information known to defendants for at least three years" and "represented to plaintiff that no adverse employment action would be instituted on account of any information known to defendants." (*Id.* at 7). Vlasek alleges that she "reasonably and justifiably relied on these representations and the course of dealing between herself and Wal-Mart." (*Id.*). Wal-Mart argues that Vlasek cannot assert a wrongful termination claim as a matter of law because she was an at-will employee and Wal-Mart did not wave its right to fire Vlasek at will and without cause. Wal-Mart also argues that Vlasek is not entitled to the relief on an estoppel claim because as a matter of law she cannot show detrimental reliance. (Docket Entry No. 57 at 5–7).

In Texas, absent a specific contract to the contrary, employment may be terminated at will and without cause. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998); *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex. 1991). To avoid the employment-at-will doctrine, an employee has the burden of proving that she and her employer had a contract that "directly limit[ed] in a 'meaningful and special way' the employer's right to terminate the employee without cause." *Massey v. Houston Baptist Univ.,* 902 S.W.2d 81, 83 (Tex. App.–Houston [1st Dist.] 1995, writ denied) (quoting *Lee-Wright,*

15

*Inc. v. Hall,* 840 S.W.2d 572, 577 (Tex. App.–Houston [1st Dist.] 1992, no writ)).  In the contract, the employer "must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Brown,* 965 S.W.2d at 502.  Such an intent is not manifested by general comments or statements that an employee will not be terminated as long as her work is satisfactory.  Nor do comments to the effect that an employee will be discharged only for "good reason" or "good cause" manifest an intent to alter the at-will relationship unless there is an agreement between the employer and employee on what those terms encompass.  *Brown,* 965 S.W.2d at 502.  To be enforceable, an agreement to modify the employment-at-will relationship must be (1) expressed rather than implied and (2) clear and specific.  *See Brown,* 965 S.W.2d at 502; *Kooken v. Leather Center, Inc.*, No. 05-97-01202-CV, 2000 WL 381926, at *5 (Tex. App.–Dallas Apr. 3, 2000); *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); *Byars v. City of Austin,* 910 S.W.2d 520, 523 (Tex. App.–Austin 1995, writ denied).

Vlasek was hired as an at-will employee.  (Docket Entry No. 30, Ex. A at 166–67). The statements she attributes to local Wal-Mart managers did not create an express agreement not to fire her for being a registered sex offender.  In her September 5, 2007 deposition, Vlasek testified that in her meetings with local managers she was told "that everything would be okay," "as far as I'm concerned, you don't talk about this any further, I don't talk about this any further, and we've all got skeletons in our closet" and "I consider it to be a dead issue."  (Docket Entry No. 30, Ex. A at 125, 157–58).  In her May 25, 2008

16

affidavit, Vlasek stated that she interpreted these statements to mean "that as long as [she] performed well, the criminal events of [her] past would not affect [her] status with the company," and that "as long as [she] did [her] job, the accusations would have no impact on [her] employment."  (Docket Entry No. 30, Ex. A at 125, 158; Docket Entry No. 55, Ex. A at 2–3).  But the test for whether an employer's statement modifies the at-will employment relationship is whether there was a clear and specific express agreement to do so, not whether the employee interpreted the statements as a promise not to fire the employee.  *See Williams v. Perot Systems Corp*., No. 05-96-00482-CV, 1998 WL 136484, at *3 (Tex. App.–Dallas March 11, 1998, no pet.) (citing *Byars*, 910 S.W.2d at 523; *Martinez*, 864 S.W.2d 775).  Vlasek conceded that the district manager did not make any written commitment and did not promise her that her "job would be there forever."  (Docket Entry No. 30, Ex. A at 186).  The local managers' statements did not clearly and specifically express an intent to modify Vlasek's employment status.  *See Miguel v. City of Laredo*, No. 04-95-00627-CV, 1996 WL 269466, at *2 (Tex. App.–San Antonio May 22, 1996) (finding that plaintiff's own affidavit containing a conclusory statement that he had an oral yearly contract subject to a performance review failed to raise a fact issue as to whether he was not an at-will employee).

Even if the local Wal-Mart managers had made express assurances to Vlasek, they would not have waived Wal-Mart's right to fire Vlasek for being a registered sex offender because the local managers did not have the authority to modify Vlasek's at-will employment status.  An agreement modifying an employee's at-will status is effective only if it was

17

entered into by a person with the authority to make the modification.  *Moore v. Office of Atty. Gen.*, 820 S.W.2d 874, 877 (Tex. App.–Austin 1991, no writ); *see also Miguel*, 1996 WL 269466, at *2 (finding that employee failed to show he was not an at-will employee because he did "not identify any City official who was authorized to offer him a continuing contract" or "offer a certified copy of any City Council minutes which would indicate approval of such terms as would alter the at-will employment status the City has with its employees").  The local managers who met with Vlasek did not have the actual authority to modify her at-will employment status through oral statements.  (Docket Entry No. 30, Exs. E, F).  Nor did they have apparent authority to do so.  When Vlasek applied for a job with Wal-Mart, she signed a document expressly stating that she understood that her at-will employment status could be "changed only by a written agreement signed by the President of Wal-Mart Stores, Inc." (*Id.*, Exs. K, A at 85).

Vlasek cites *Goodyear Tire and Rubber Co. v. Portilla*, 879 S.W.2d 47 (Tex. 1994), as support for the proposition that Wal-Mart waived its right to fire her for being a registered sex offender.  In *Portilla*, the plaintiff was fired for violating the employer's antinepotism policy barring managers from overseeing employees who were family members.  Under the policy, any employee found to be working under the supervision of a family member had to accept a transfer or be terminated, unless an executive at the company's Ohio headquarters granted a specific exception to the antinepotism policy.  Five years after the plaintiff began working in one of the employer's Texas stores, her brother was hired as the store manager.

18

Every employee at the store and the assistant district managers and district managers for the South Texas quadrant of the employer's sales operations was aware that the store manager was the plaintiff's brother.  The plaintiff worked under the supervision of her brother for 17 years until an audit "rediscovered" that the plaintiff was supervised by her brother and the employer discharged her for refusing to accept a transfer.  *Id.* at 48–49.

The *Portilla* court upheld a jury verdict finding that there was an express waiver of the antinepotism policy because there was evidence that an audit conducted four years after the plaintiff's brother became store manager brought the situation to the employer's attention, the plaintiff's brother specifically requested a written waiver in his written response to that audit, an executive at the employer's Ohio headquarters who had the actual authority to grant the written exception testified that he issued a written waiver to district supervisory personnel, and the conduct of district managerial personnel indicated that the waiver was granted.  *Id.* at 50–51.  The court stated that "[t]he employment-at-will doctrine has always been subject to specific contractual agreement defining an exception" and "only applies absent a specific contractual provision to the contrary."  *Id.* at 51.  The court found that the evidence could show that the employer had expressly contracted not to fire Portilla for violating the antinepotism policy.  *Id.* at 51–52 (citations omitted).

In contrast to *Portillo*, in which the employer issued a written waiver explicitly stating that the plaintiff would not be fired for violating a specific employment policy, the  local managers' statements to Vlasek consisted of such vague oral assurances as "everything

would be okay," that "you don't talk about this any further, I don't talk about this any further," that Vlasek's status as a sex offender "was a dead issue," and that "we've all got skeletons in our closet." (Docket Entry No. 30, Ex. A at 125, 157–58). These statements were not in writing, despite a clear policy that the at-will status could only be modified by a written agreement. These oral statements do not convey a clear and specific express agreement to modify the at-will status of Vlasek's employment by promising not to fire her because of her criminal record as a sex offender even if Wal-Mart had a policy of firing employees with such records. *See Williams*, 1998 WL 136484, at *4 ("Unlike *Portilla*, Williams has not shown a clear, express, waiver of PSC's policies prohibiting PSC employees from conducting business with PSC vendors.").

Vlasek has failed to show a basis for equitable relief on her estoppel claim because she has not identified facts in the summary judgment record showing detrimental reliance. The elements of a promissory estoppel claim are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to her detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983). A promise to provide employment-at-will does not provide a basis for detrimental reliance on continued employment, as a matter of law. *See generally Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608 (Tex. 2002); *Collins v. Allied Pharmacy Mgmt.*, 871 S.W.2d 929, 937 (Tex. App.– Houston [14th Dist.] 1994, no writ); *see also Hinds v. Orix Capital Markets, L.L.C.*, No. Civ.A.

20

302CV0239-P, 2003 WL 22132791, *6 –7 (N.D. Tex. Sept. 11, 2003);  *Raggio v. Parkland*

*Mem'l Hosp.*, No. 3-95-CV-0680-R, 1997 WL 135662, at *9 (N.D. Tex. Mar. 12, 1997).

The record shows that Vlasek had been at Wal-Mart for years before any of the statements she alleges as a basis for arguing equitable estoppel.  The record contains no evidence of a specific job opportunity that she chose not to take in reliance on continued employment at Wal-Mart.  To the contrary, Vlasek did not look elsewhere for employment during the seven years she worked at Wal-Mart.  The case law is clear that continuing to work for the at-will employer is not detrimental reliance on the indefinite availability of that job.  *See Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 378–79 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

Vlasek's claim of laches also fails.  "Laches is an equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting the claim, when the delay or negligence has prejudiced the party against whom relief is sought." 30A C.J.S. *Equity* § 139 (2008).  "Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex. 1989) (citing *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964)).  Wal-Mart has not asserted any claims against Vlasek.  Instead, Vlasek's claim is that Wal-Mart's delay in firing her after it learned she was a convicted sex offender estopped or

waived Wal-Mart from doing so.  The doctrine of laches does not apply and the doctrines of estoppel and waiver provide no relief.

Wal-Mart's motion for summary judgment on Vlasek's claims for wrongful termination, waiver, estoppel, and laches is granted.

**IV.    Conclusion**

Wal-Mart's motion for summary judgment is granted and Vlasek's cross-motion for summary judgment is denied.  Vlasek's motion to compel production, Wal-Mart's motion to strike Vlasek's cross-motion, Wal-Mart's motion to strike Vlasek's expert, and Vlasek's motion to extend the time to respond to that motion, are denied.  Wal-Mart's motion to place documents under seal is granted.  Final judgment is entered by separate order.

SIGNED on July 22, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

22